# Supreme Court of Florida

No. SC21-284

**IN RE: AMENDMENT TO RULE REGULATING THE FLORIDA BAR 6-10.3.**

December 16, 2021

PER CURIAM.

Earlier this year, the Court amended the Rules Regulating the Florida Bar to preclude continuing legal education credit for "any course submitted by a sponsor, including a section of The Florida Bar, that uses quotas based on race, ethnicity, gender, religion, national origin, disability, or sexual orientation in the selection of course faculty or participants." *In re Amendment to Rule Regulating the Florida Bar 6-10.3*, 315 So. 3d 637, 639 (Fla. 2021). Although the amendment took effect immediately, the Court invited comments from interested persons. *Id.* at 638.

Having reviewed those comments, we have decided to modify the rule amendment in two limited respects. First, in deference to Florida Bar members who planned their 2021 CLE activities in

reliance on the preamendment status quo, we postpone the effective date of the rule amendment until January 1, 2022. Second, we amend the text to clarify that CLE credit will be unavailable for courses with any sponsor that uses quotas covered by the rule, whether course approval is sought by the sponsor or by an individual bar member.[1]

## I.

The Court amended rule 6-10.3 in response to a "Diversity & Inclusion CLE Speaker Panel Policy" that the Business Law Section of the Florida Bar adopted on September 1, 2020. For ease of reference, we have attached that policy to this opinion as Appendix B.

On its face, the policy "will require" CLE program panels to include a minimum number of "diverse" members, depending on the size of the panel. And on its face, the policy defines diversity in terms of a person's membership in "groups based upon race, ethnicity, gender, sexual orientation, gender identity, disability and multiculturalism." The Business Law Section has rescinded this

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

policy, but only as a response to our rule amendment. The Section

informs us that, if the Court were to revoke the rule amendment,

the Section would reinstate the policy.

The Business Law Section modeled this policy on a similar

policy of the American Bar Association. The ABA adopted its own

policy after finding that ABA entities had "fail[ed] to comply" with

the organization's "aspirational policy" that all CLE panels include

"diverse members of our profession." Appendix to Comments of the

American Bar Association, at 98.[2] The ABA uses the term "diverse

members of our profession" to describe "women, racial and ethnic

minorities, persons with disabilities, and persons of differing sexual

orientations and gender identities." *Id.*

When we adopted the rule amendment, we described the

Business Law Section's policy as imposing "quotas." *See In re*

*Amendment to Rule Regulating the Florida Bar 6-10.3*, 315 So. 3d at

637. The label fits: as a matter of ordinary usage, the term "quota"

includes "[a] number or percentage, especially of people,

---

2. *See also* Comments of the American Bar Association, at 9 ("Unfortunately, *voluntary* efforts fell far short of the [2011] Diversity Plan's aspirations.") (emphasis added).

constituting a required or targeted minimum." *American Heritage Dictionary* at 1447 (5th ed. 2011). The Section's policy requires a minimum percentage of "diverse" CLE program panelists. In doing so, the policy necessarily caps the allowable percentage of nondiverse panelists.

Our decision also said that "[q]uotas based on characteristics like the ones in this policy are antithetical to basic American principles of nondiscrimination." *In re Amendment to Rule Regulating the Florida Bar 6-10.3*, 315 So. 3d at 637. The policy treats people differently (i.e., discriminates) based on their membership in groups defined by "race, ethnicity, gender, sexual orientation, gender identity, disability and multiculturalism." Our laws consider it presumptively wrong to discriminate on these grounds—especially when government does the discriminating, but also in many contexts involving discrimination by private entities.

We reject the notion that quotas like these cause no harm. Quotas depart from the American ideal of treating people as unique individuals, rather than as members of groups. Quotas are based on and foster stereotypes. And quotas are divisive. "It would be a sad day indeed, were America to become a quota-ridden society,

with each identifiable minority assigned proportional representation in every desirable walk of life." *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) (quoting Nathaniel L. Nathanson & Casimir J. Bartnik, *The Constitutionality of Preferential Treatment for Minority Applicants to Professional Schools*, 58 Chicago Bar Rec. 282, 293 (May–June 1977)).

In deciding whether and how to address the Business Law Section's policy, we reached two basic conclusions: first, that it would be wrong for the Court to turn a blind eye to this sort of discrimination; and second, that any regulatory response should address the use of discriminatory quotas by any CLE course sponsor, regardless of its affiliation with The Florida Bar. This Court has limited authority over the policies of entirely private entities, and rightly so. But we do have the authority—and, we think, a duty—to disassociate The Florida Bar's CLE infrastructure from entities with discriminatory quota policies like the one here.

This Court is firmly committed to the principles of nondiscrimination and equal opportunity for all. Consistent with that commitment, we support proactive measures to ensure that individuals from all backgrounds are afforded fair opportunities to

participate in CLE programs and in the legal profession more generally.  Inclusivity is a laudable goal, and it can be achieved without resorting to discriminatory quotas.

II.

With a handful of exceptions, the forty-plus comments the Court received in response to the rule amendment were negative.  But we respectfully disagree with the opponents' principal objections, and we will explain why.

*The Court's authority to adopt the rule amendment.*  Some commenters characterized the Court as having (improperly) ruled on the legality of the Business Law Section's policy outside the context of an adversarial case or controversy.  The Court did no such thing; we did not act in an adjudicative capacity or purport to rule on the legality of any policy.[3]  Instead, we measured the policy

---

3.  For this reason, commenters' objections to this Court's "*Cf.*" citations of *Grutter v. Bollinger,* 539 U.S. 306 (2003), and *Regents of University of Cal. v. Bakke,* 438 U.S. 265 (1978), are beside the point.  We did not say that the Business Law Section and the ABA are state actors, nor did we purport to apply the Equal Protection Clause to those groups' CLE speaker policies.  *Grutter* and *Bakke* are relevant because they illuminate the harm caused by race-based quotas and stress the importance of treating people as individuals, rather than as members of groups.

against "basic American principles of nondiscrimination," and we acted under our general authority to set the rules that govern The Florida Bar. The rule amendment reflects this Court's policy decision to disassociate The Florida Bar's CLE infrastructure from program sponsors that use discriminatory quota policies like the one at issue.

*Whether the policy causes harm.* Many commenters object to our labeling the Business Law Section's and the ABA's policies as "quota" policies. These commenters further maintain that, labels aside, the policies harm no one and are intended to include rather than to exclude. We have no doubt that supporters of the policies at issue genuinely see things this way.

But we already have explained why it is correct, as a matter of standard English, to describe these policies as imposing quotas.[4] We also have explained our view that quotas harm individuals and

---

4. After the Court adopted the rule amendment, the ABA added the following language to its policy: "This is a policy of inclusion and not exclusion. To that end, if a CLE panel is not otherwise diverse, program organizers will add panel participants who bring diversity to achieve the goal of this policy." But the policy still requires minimum numbers of "diverse" members on CLE panels of three or more. The ABA's policy is still a quota policy.

society.  Again, quotas ignore each person's uniqueness and innate worth; promote stereotyping; and sow division.

We note that, *on their face*, the Business Law Section and ABA policies make no attempt to connect a person's "diversity" to the subject matter or educational content of the CLE program.  The ABA's submission to the Court indicates that it administers its diversity requirement this way: "Program planners ask potential speakers to voluntarily answer the following question: Do you identify yourself as diverse?"  Appendix to Comments of the American Bar Association, at 123.  A person's answer to this question is then used to determine how to categorize a person (nondiverse or diverse) for purposes of compliance with the diversity policy.  This approach smacks of stereotyping or naked balancing; it does not invite a "holistic" assessment of whatever unique perspective an individual might bring to a panel.

*Importance of the ABA's CLE programs.*  Many commenters praised the content and value of the ABA's CLE programming and bemoaned the rule amendment's effect on that programming.  Of course, our rule amendment does not prohibit anyone from attending an ABA CLE program or from partnering with the ABA.

Nonetheless, we acknowledge the concerns of those commenters who would like to receive CLE credit for their attendance at ABA-sponsored or cosponsored programs. We sincerely hope that the ABA will solve this problem by abandoning its quota policy and pursuing its diversity-related goals without resorting to discriminatory quotas—something that institutions throughout our society have shown themselves able to do.

### III.

In our decision adopting the rule amendment, we attempted to honor Florida Bar members' reliance interests by providing that the amendment would not apply to any course that, as of the effective date, had already been approved for CLE credit. Some of the commenters indicated that this amount of advance notice was insufficient—perhaps because they had already paid their ABA dues for the year, or because they had invested time and energy preparing a course that had not yet been approved. These are valid concerns. Therefore, we give the amendment to rule 6-10.3 a revised effective date of January 1, 2022.

Commenters also expressed uncertainty over the rule amendment's application when an individual bar member, rather

than a course sponsor, submits a course for CLE credit approval. As reflected in the attached Appendix A, we amend the rule text to clarify that CLE credit will be unavailable for any course with a sponsor that uses quotas covered by the rule, whether approval is sought by the sponsor or by an individual bar member. New language is indicated by underscoring; deletions are indicated by struck-through type.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

LABARGA, J., dissenting.

Today, on its own motion, a majority of this Court has embarked on a course that will undoubtedly culminate in the erosion of the judicial branch's needed and well-established policy of promoting and advancing diversity and inclusiveness throughout the branch. Because I cannot agree with this course of action, I respectfully dissent.

- 10 -

As noted by the majority, the Business Law Section of the Florida Bar, in line with American Bar Association (ABA) efforts to diversify Continuing Legal Education (CLE) panels, adopted a "Diversity & Inclusion CLE Speaker Panel Policy" that required CLE program panels to include a minimum number of "diverse" members, depending on the size of the panel. Majority op. at 2-3. Because "the policy defines diversity in terms of a person's membership in groups based on race, ethnicity, gender, sexual orientation, gender identity, disability, and multiculturalism," under the guise of a dictionary definition of the term "quota," the majority deemed the policy discriminatory and has prohibited its implementation. Majority op. at 3-4. However, I am persuaded that the policy is not discriminatory because, as illustrated by the sheer scope of the policy's definition of diversity, the intent is to *include*, *not exclude*, CLE panel participants.

When rule 6-10.3 was initially amended, this Court invited interested persons to submit written comments. *See In re Amend. to Rule Reg. the Fla. Bar 6-10.3*, 315 So. 3d 637, 638 (Fla. 2021). Dozens of comments were filed in response, the overwhelming majority of which opposed amending the rule. Representing a

- 11 -

significant community of attorneys and law firms, voluntary bar associations, law school deans, and legal organizations, the comments in opposition persuasively objected to the majority's action and its rationale for doing so.

Of particular relevance are the comments filed by the ABA, which argued regarding its policy (after which the Business Law Section's policy was modeled):

> The ABA's approach is neither a "quota" nor a preference system that would fail under the United States Supreme Court's equal protection case law. The essence of the Court's cases is that quotas cannot be used to infringe on legally protected interests—and the Diversity & Inclusion Policy infringes on no one's protected interests.
>
> There are no "set asides" or reserved seats for certain categories of individuals. In the rare instance in which a panelist who brings diversity could not be located, the ABA is empowered to grant a waiver for an individual program. More typically, however, an individual who brings diversity has been identified–and then added to the CLE panel. No panel members are displaced or replaced under the Diversity & Inclusion Policy's aegis. There is thus no interest of any individual to be protected from the policy.

Comments of Am. Bar Ass'n at 3-4. The Business Law Section of the Florida Bar also explained regarding its now-rescinded policy:

> Any program that has two or fewer panelists does not need to consider diversity as a factor. It is only when there are three or more panelists on a program that

diversity consideration come[s] into play. And even then, if the benchmarks identified in the policy for programs with three or more speakers cannot be met, the Section may waive the CLE Diversity Policy or make an exception to it. Because the policy allows for waivers, appeals, exceptions, and is not required for all programs, it is, by definition, not mandatory. For all these reasons, the CLE Diversity Policy is appropriate, narrowly tailored, and served a compelling interest.

Comments of Bus. L. Section of Fla. Bar at 20 (footnote omitted).

In addition to these and other persuasive arguments regarding the appropriateness of the policy, numerous comments also expressed concern that the majority amended rule 6-10.3 on its own motion. While the majority today reasserts its authority to do so, it is noteworthy that the unilateral action the Court takes here is not isolated. Rather, the majority's decisions of late have ushered in a series of drastic changes in civil, criminal, and rulemaking contexts, and today's decision by the majority only furthers this list. The Virgil Hawkins Florida Chapter of the National Bar Association (VHFCNBA) compellingly argues and echoes the procedural concern raised by numerous commenters, and while the Business Law Section's policy was not limited to consideration based on race or ethnicity, the organization makes a worthy argument regarding the impact of the majority's action on Black lawyers:

Legislating on matters of diversity that particularly and directly impact Black lawyers without lawyers and the entire organized bar first discussing, evaluating, and proposing the means to incorporate diversity into the profession is contrary to public policy and the legislative prescription for our judicial system. Black lawyers, who historically have been excluded from Florida law schools, the judiciary, and Bar participation solely because of the color of their skin, should have a real and meaningful opportunity to do more than comment on a *sua sponte* rule change that is already the law in Florida without any prior notice or an opportunity to be heard.

Even more, the Court's rule change comes in the absence of a case or controversy challenging the constitutionality (or advisability) of the Business Law Section's studied policy and in the absence of a proper invocation of the Court's rule-making authority. Given the scarcity of cases in which this Court has *sua sponte* amended Bar rules, one can reasonably ask: Is this the policy that should define the Court's jurisdictional limits in matters of bar rules? VHFCNBA urges the Court to exercise judicial restraint and to follow the established amendment procedure.

Comment of Virgil Hawkins Fla. Chapter Nat'l Bar Ass'n at 17-18.

But today, despite various commenters' extensive input and overwhelming recommendations to the contrary, the majority reaffirms the amendment to rule 6-10.3. While I wholeheartedly agree with the majority's statement that inclusivity is a laudable goal, I also agree with the ABA that the CLE diversity policy in question here is neither a quota nor a preference system that would

- 14 -

run afoul of existing equal protection case law, and I agree with the Business Law Section that the policy is appropriate because it is narrowly tailored and serves a compelling interest.

For these reasons, I respectfully dissent.

Original Proceeding – Florida Rules Regulating the Florida Bar

Gary L. Sasso and Nancy J. Faggianelli on behalf of Carlton Fields, P.A., Tampa, Florida, and Rae T. Vann on behalf of Carlton Fields, P.A., Washington, District of Columbia; Joanne Fanizza of Law Offices of Joanne Fanizza, P.A., Melville, New York; Andrew S. Berman of Young, Berman, Karpf & Karpf, P.A., Miami, Florida; Twyla Sketchley, Tallahassee, Florida; Nancy Cayford Wear, Coral Gables, Florida; Brian L. Tannebaum on behalf of the Association of Professional Responsibility Lawyers, Miami, Florida; Tricia "CK" Hoffler of The CK Hoffler Firm, on behalf of the National Bar Association, Atlanta, Georgia; Kellye Y. Testy, Angela C. Winfield, and Leanne M. Shank on behalf of the Law School Admission Council, Newtown, Pennsylvania; Rosemary N. Palmer, Tallahassee, Florida, Ronald S. Flagg on behalf of the Legal Services Corporation, Washington, District of Columbia; Brandon S. Peters, Williston, Florida; E. Thomas Sullivan on behalf of the American Bar Foundation and the American Bar Association, Chicago, Illinois; Karin J. Orlin of Karin J. Orlin, P.L., New York, New York; Trelvis D. Randolph on behalf of the Wilkie D. Ferguson, Jr. Bar Association, Miami, Florida, and Christopher M. Lomax on behalf of the Wilkie D. Ferguson, Jr. Bar Association, Coral Gables, Florida; A.B. Cruz III and Edgar Chen on behalf of the National Asian Pacific American Bar Association, Washington, District of Columbia, Hannah Choi of Lee Law Group, PLLC, on behalf of the Asian Pacific American Bar Association of Tampa Bay, Tampa, Florida, Guy Kamealoha Noa on behalf of the Asian Pacific American Bar Association of South Florida, Miami, Florida, Onchantho Am on behalf of the Greater Orlando Asian American Bar Association, Orlando, Florida, and Vivile R. Dietrich of Glazier, Glazier & Dietrich, P.A., on behalf of the Jacksonville Asian American Bar Association; Jacksonville,

Florida; Michael J. Gelfand of Gelfand & Arpe, P.A., West Palm Beach, Florida; Hon. Blaise Trettis, Public Defender, Eighteenth Judicial Circuit, Melbourne, Florida; Jane W. Muir on behalf of the Miami-Dade County Bar Association, Miami, Florida; Anthony C. Musto on behalf of the Public Interest Law Section of The Florida Bar, Hallandale Beach, Florida; William Hodes of The William Hodes Law Firm, The Villages, Florida; Adam R. Maingot on behalf of the Health Law Section of The Florida Bar, Temple Terrace, Florida; William C. Hubbard and William H. Neukom on behalf of World Justice Project, Washington, District of Columbia; Jason B. Blank on behalf of Criminal Law Section of The Florida Bar, Fort Lauderdale, Florida, and Warren William Lindsey on behalf of Criminal Law Section of The Florida Bar, Winter Park, Florida; James D. Wing, Mount Dora, Florida; Mariane L. Dorris of Shuker & Dorris, P.A., on behalf of the Business Law Section of The Florida Bar, Orlando, Florida, and Dineen Pashoukos Wasylik of DPW LEGAL, on behalf of the Business Law Section of The Florida Bar, Tampa, Florida; Hon. Jessica J. Yeary on behalf of the Florida Public Defender Association, Inc., Tallahassee, Florida; James M. Meyer and Ana M. Barton on behalf of The Florida Bar International Law Section, Miami, Florida; Morris Weinberg, Jr. and Marcos E. Hasbun on behalf of Zuckerman Spaeder LLP, Tampa, Florida; Hon. Carlos J. Martinez on behalf of the National Association for Public Defense, Miami, Florida; Kristin R.H. Kirkner on behalf of the Family Law Section of The Florida Bar, Tampa, Florida, Jack A. Moring on behalf of the Family Law Section of The Florida Bar, Crystal River, Florida, and Heather L. Apicella on behalf of the Family Law Section of The Florida Bar, Boca Raton, Florida; Kimberly E. Hosley and Jenny Sieg on behalf of the Florida Association for Women Lawyers, Orlando, Florida, and Kristin Drecktrah Paz on behalf of the Miami-Dade Chapter of the Florida Association for Women Lawyers, Miami, Florida; Patricia Lee Refo, on behalf of the American Bar Association, Chicago, Illinois, Elliot H. Scherker, Brigid F. Cech Samole, and Bethany J. M. Pandher of Greenberg Traurig, P.A., on behalf of the American Bar Association, Miami, Florida; Monica Vigues-Pitan on behalf of the Florida Civil Legal Aid Association, Miami, Florida; Sean Domnick and Navan Ward on behalf of the American Association for Justice, Washington, District of Columbia; Deborah S. Corbishley and Anna

T. Neill on behalf of Kenny Nachwalter, P.A., Miami, Florida; Denise A. Mutamba on behalf of the F. Malcolm Cunningham, Sr. Bar Association, Riviera Beach, Florida; Deborah Hardin Wagner, Tampa, Florida, Daniel J. Staudt on behalf of the Intellectual Property Owners Association, Washington, District of Columbia; Zack Smith on behalf of Legal Fellow, The Heritage Foundation, Washington, District of Columbia; Aurora Austriaco on behalf of the National Conference of Bar Presidents, Chicago, Illinois; Christopher Buerger on behalf of the National Legal Aid & Defender Association, Washington, District of Columbia; Michael T. Davis of Kuehe Davis Law, P.A., on behalf of the Virgil Hawkins Florida Chapter National Bar Association, Inc., Miami, Florida, and Noel G. Lawrence of Law Offices of Noel G. Lawrence, P.A., on behalf of the Virgil Hawkins Florida Chapter National Bar Association, Inc., Jacksonville, Florida; Andrew A. Harris of Harris Appeals, P.A., on behalf of the Florida Justice Association and the Palm Beach County Justice Association, Palm Beach Gardens, Florida; and William C. Hubbard on behalf of Law School Deans – Christopher J. (C.J.) Peters, Alicia Ouellette, Roger A. Fairfax, Jr., Marc L. Miller, Ronald Weich, Diane Ring, Angela Onwuachi-Willig, Michael T. Cahill, Aviva Abramovsky, Erwin Chemerinsky, Kevin R. Johnson, David L. Faigman, Bryant G. Garth, Jennifer L. Mnookin, Reynaldo Anaya Valencia, Anita K. Krug, Verna L. Williams, Lee Fisher, Lolita Buckner Inniss, Eboni S. Nelson, Joshua P. Fershée, Andrew L. Strauss, Jelani Jefferson Exum, Renée McDonald Hutchins, Daniel M. Filler, Luke Bierman, Dayna Bowen Matthew, William Treanor, LaVonda N. Reed, Colin Crawford, Camille A. Nelson, Danielle Holley-Walker, Karen E. Bravo, Mary J. Davis, Lee Ann Wheelis Lockridge, Madeleine M. Landrieu, Donald B. Tobin, Garry W. Jenkins, Patricia W. Bennett, Susan H. Duncan, Barbara Glesner Fines, Anthony Niedwiecki, Richard E. Moberly, Scott P. Brown, Sergio Pareja, Anthony W. Crowell, Martin H. Brinkley, Browne C. Lewis, Felicia Epps, James R. Hackney, Cassandra L. Hill, José Roberto (Beto) Juárez, Jr., Horace Anderson, Jr., Michael Hunter Schwartz, Danielle M. Conway, Hari M. Osofsky, Paul L. Caron, Fernando Moreno-Orama, Gregory W. Bowman, Rose Cuison-Villazor, Michael A. Simons, William P. Johnson, Henry C. (Corky) Strickland, III, Robert Schapiro, Michael J. Kaufman, William C. Hubbard, John K. Pierre, Andrew T. Guzman, Camille M. Davidson,

Craig M. Boise, Douglas A. Blaze, Robert B. Ahdieh, D. Benjamin Barros, David D. Meyer, Lyn Suzanne Entzeroth, Elizabeth Kronk Warner, Jane H. Aiken, Carla D. Pratt, Richard A. Bierschbach, Amelia Smith Rinehart, Allen K. Easley, James McGrath, Sudha N. Setty, Brian R. Gallini, Daniel P. Tokaji, Columbia, South Carolina,

Responding with comments

**APPENDIX A**

**Rule 6-10.3.    Minimum Continuing Legal Education Standards**

**(a)– (c)    [No Change]**

**(d)  Course Approval.**  Course approval is set forth in policies adopted pursuant to this rule.  Special policies will be adopted for courses sponsored by governmental agencies for employee lawyers that exempt these courses from any course approval fee and may exempt these courses from other requirements as determined by the board of legal specialization and education.  The board of legal specialization and education may not approve any course with~~submitted by~~ a sponsor, including a section of The Florida Bar, that uses quotas based on race, ethnicity, gender, religion, national origin, disability, or sexual orientation in the selection of course faculty or participants.

**(e) – (g)    [No Change]**

# APPENDIX B

:: SEPTEMBER 1, 2020

MF COMMITTEE

t: JOINT IMF/FLORIDA BAR DIVERSITY & INCLUSION COMMITTEE STUDY GROUP
*bers of Study Group*:

|  | **Florida Bar Diversity & Inclusion Committee** |
|---|---|
| iane Dorris | Michael Andriano |
| 1 Dorris | David Brunell |
|  | Julian Jackson Fannin |

LS DIVERSITY & INCLUSION CLE SPEAKER PANEL POLICY ("CLE DIVERSITY POLICY"):

The Business Law Section ("BLS") expects all Continuing Legal Education (CLE) rams sponsored or co-sponsored by the BLS to meet the goals of the Diversity Committee gic Plan of eliminating bias, increasing diversity and implementing tactics aimed at iting and retaining diverse attorneys. These goals are furthered by having the faculty include bers of diverse groups based upon *race, ethnicity, gender, sexual orientation, gender identity, ility and multiculturalism*.

### CLE Diversity Policy:

For these reasons, the Study Group recommends the following CLE Diversity Policy. This y applies to CLE programs with three or more panel participants, including the moderator. tive **January 1, 2021**, the following guidelines will apply: (a) individual programs with ty of three or four panel participants, including the moderator, will require at least 1 diverse ber; (b) individual programs with faculty of five to eight panel participants, including the rator, will require at least 2 diverse members; and (c) individual programs with faculty of or more panel participants, including the moderator, will require at least 3 diverse members. BLS will not sponsor, co-sponsor, or seek CLE accreditation for any program failing to ly with this policy unless an exception or appeal is granted.

### Implementation:

The Inclusion, Mentoring & Fellowship Committee ("IMF"), will be responsible for the mentation and enforcement of the CLE Diversity Policy. As such, any question of liance with the CLE Diversity Policy will be determined by the IMF Committee. If a sed CLE panel does not comply with the CLE Diversity Policy and cannot be granted an tion, as defined below, then the BLS will not sponsor the CLE. **All applications for rams seeking CLE accreditation and BLS sponsorship shall be submitted to the IMF mittee at least seven (7) days prior to the date the program is scheduled to occur.**

At the discretion of the IMF Committee and the Chair of the Section, either of the following mstances *may* constitute grounds for an exception from the CLE Diversity Policy:

- Previously confirmed diverse speakers or moderators for the CLE cancel, withdraw or become unable to attend and participate in the CLE and insufficient time exists to replace them and maintain a diverse panel.

- After a diligent search and inquiry, the proponents of the CLE have affirmed they have been unable to obtain the participation of the requisite diverse members of the CLE panel.

**Diverse Speaker Directory:**

n order to assist in the implementation of the CLE Diversity Policy, IMF will create and a Diverse Speaker Directory ("Directory"). The Directory will provide a database of legal hat self-identify from a race, ethnicity, gender and gender identity, sexual orientation, y and multicultural perspective. In addition to the above, individuals who register with ctory shall identify their geographical location, willingness to travel, speaker fees if any, s of expertise/interest, in addition to a CV.